UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN P. GUIDRY and<br>SIMUL-VISION CABLE SYSTEMS, LTD,<br><br>    Plaintiffs,<br><br>V.<br><br>SEVEN TRAILS WEST, LLC, and<br>UBS REALTY INVESTORS, LLC,<br><br>    Defendants. | Case No. 4:12CV1652 NCC |

## MEMORANDUM AND ORDER

Before the court is the Motion for Summary Judgment filed by Defendants Seven Trails West, LLC, (Seven Trails) and UBS Realty Investors, LLC, (UBS) (jointly, Defendants). (Doc. 80). Also before the court is the Motion to Strike Affidavit of Michael A. Clithero filed by Plaintiffs John Guidry and Simul-Vision Cable Systems, L.T.D., (jointly, Plaintiffs) (Doc. 106), and the Motion Nunc Pro Tunc for Leave to File Sur-Reply (Doc. 111) filed by Defendants.[1] The matters are briefed and ready for disposition.[2] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 64).

---

[1] Defendants' Motion Nunc Pro Tunc addresses their previously filed Sur-Reply for which they did not seek leave of court to file. (Doc. 110). Plaintiffs do not object to the Motion Nunc Pro Tunc but have filed a Response in which they object to the arguments made in Defendants' Response to Plaintiffs' Motion to Strike Affidavit of Michael A. Clithero. (Doc. 112).

[2] Defendants have not responded to Plaintiffs' Statement of Uncontroverted Material Facts in Support of its Opposition to Defendants' Motion for Summary Judgment. (Doc. 90). Rather, in a footnote, Defendants ask the court to "strike" this filing and state that they do not admit any of the facts asserted unless also stated in Defendants' Statement of Undisputed Material Facts and that they "reserve the right to address them if required." (Doc. 95 at 1 n.1). Defendants have thus failed to comply with Fed. R. Civ. P. 56(c) and Local Rule 7-401(E). Notably, both Rules anticipate the submission, by a party opposing a motion for summary judgment, of a statement of additional undisputed material facts in support of the opposing party's position, and Rule 7-401(E) provides that all matters set forth in a statement of material facts "shall be deemed

**MOTION TO STRIKE AFFIDAVIT**

Defendants filed the affidavit of Michael Clithero (original Clithero Affidavit) in support of their Motion for Summary Judgment. Subsequently, Defendants sought leave to file a replacement Clithero Affidavit (Doc. 92), and, in a June 18, 2014 telephone conference, the court stated that it was inclined to allow Defendants to file the replacement Clithero Affidavit, with the proviso, that Plaintiffs be permitted to take Mr. Clithero's deposition. The court further said that it would also consider granting Defendants leave to withdraw their motion to file the replacement Clithero Affidavit. (Doc. 105 (Tr. of 06/18/2014 Conference) at 10-11). Defendants subsequently filed a motion to withdraw the replacement affidavit (Doc. 102), which the court subsequently granted (Doc. 108).

Now pending is Plaintiffs' Motion to Strike the original Clithero Affidavit. (Doc. 106). Plaintiffs cite several reasons why the court should strike the original Clithero Affidavit. In agreement with Defendants, however, the court finds that the original affidavit should not be stricken because Plaintiffs have admitted relevant assertions in the original Clithero Affidavit as reiterated in Defendants' Statement of Material Facts; Defendants have not suggested that statements made in the original Clithero Affidavit are incorrect or untrue, but rather that the statements are incomplete. (Doc. 89, ¶¶ 26, 32-39, 41, 44, 46, 54). Moreover, the court's granting or denying Plaintiffs' Motion to Strike the original Clithero Affidavit is not outcome-determinative of the Motion for Summary Judgment given the extensive number of disputed material facts, irrespective of the original Clithero Affidavit.

---

admitted for purposes of summary judgment unless specifically denied." In any case, the court does not deem it proper form that "motions" can be made in a footnote in a memorandum in support of another motion. Given, as found below, that there are genuine issues of material fact sufficient to deny Defendants' Motion for Summary Judgment, absent the consideration of Plaintiffs' additional suggested undisputed facts, Defendants' failure to comply with Rule 56(c) and Local Rule 7-4.01 is not determinative.

# STANDARD FOR SUMMARY JUDGMENT

The court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. See also Fenny v. Dakota, Minn. & E.R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003) (holding that an issue is genuine "if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party").

A moving party always bears the burden of informing the court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of his pleading. Id. at 256. "Factual disputes that are irrelevant or unnecessary" will not preclude summary judgment. Id. at 248.

Where the non-moving party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e).

In ruling on a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Id. at 255; Matsushita Elect. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Raschick v. Prudent Supply, Inc., 830 F.2d 1497, 1499 (8th Cir. 1987). The court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. However, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." Id. at 252. With these principles in mind, the court turns to an analysis of Defendants' Motion.

## BACKGROUND[3]

Plaintiffs generally allege, in their Second Amended Complaint, that, as of May 18, 2006, they were creditors of Seven Trails as a result of the judgment entered that date against Seven Trails, and that Seven Trails' transfer of its assets, in March 2006, constituted a fraudulent transfer done with the intent to hinder, delay or defraud Plaintiffs in their attempt to collect monies owed to them. (Doc. 15). In the pending Motion for Summary Judgment, Defendants originally sought summary judgment in their favor as to Counts 1, 2 and 4 of Plaintiffs' Second Amended Complaint; this court had previously dismissed Count 3, against Allegis Multifamily Trust, L.P., (AMTLP) "for Seven Trails' Actions Through Piercing of the Corporate Veil" and Count 1, to the extent it alleged Fraudulent Transfer by AMTLP; the court found it did not have personal jurisdiction over AMTLP and that it lacked sufficient indicia that AMTLP was the alter ego of Seven Trails. (Doc. 37). Subsequent to Defendants' filing the pending Motion for Summary Judgment, the parties filed a Stipulation of Dismissal with Prejudice of Count 2 of Plaintiffs' Second Amended Petition; in Count 2, Plaintiffs alleged Fraudulent Transfer by UBS.

---

[3] The facts are undisputed unless otherwise stated.

(Doc. 87). Thus, to the extent Defendants sought summary judgment, in regard to Count 2, their Motion is moot, as the only Counts remaining are Counts 1 as to Seven Trails and Count 4 in its entirety.

In Count 1 of the Second Amended Complaint, Plaintiffs allege fraudulent transfer by Seven Trails in that Seven Trails fraudulently caused assets to be transferred from Seven Trails to AMTLP for the purpose of avoiding Plaintiffs' collection of a monetary debt owed to them by Seven Trails as a result of the State court judgment. In Count 4, Plaintiffs allege UBS is liable for Seven Trails' failure to pay its debt, based on an allegation of piercing the corporate veil.

In August 1999, Seven Trails purchased the property known as Seven Trails Apartments (the Apartments) for approximately $26,400,000. AMTLP, a Delaware limited partnership, was the sole member of Seven Trails. AMTLP was formed as a real estate investment trust to invest in real estate throughout the United States, such as multifamily housing projects like the Apartments. At the end of September 2005, the Apartments were the last asset in AMTLP's investment portfolio. AMT Multifamily Trust, Inc. (AMT Inc.) was AMTLP's general partner prior to its merging with AMTLLC, after March 2006. AMTLLC owns approximately 92% of the partnership interests of AMTLP.

UBS (formerly known as Allegis Realty Investors LLC), a Massachusetts limited liability company, is a registered investment advisor and manages real estate for its clients. UBS uses single purpose entities to hold investment properties. UBS is the non-member manager for the single-purpose entity known as Seven Trails pursuant to the Seven Trails Operating Agreement (the Agreement). The Agreement provides that UBS has the right, power, and authority to act on behalf of Seven Trails. UBS was the investment advisor to AMTLP. UBS managed AMTLP and its numerous real estate investments for the exclusive benefit of its partners. Seven Trails

maintained its own operating account for purposes of managing the Apartments and maintained its own separate books, records and bank accounts when it had them. The role UBS played in managing the day-to-day operations and finances of Seven Trails is disputed. (Doc. 82 (Defendants' Statement of Undisputed Facts) (DSUF) ¶ 9; Doc. 89 (Plaintiffs' Response to DSUF) (PRDSUF) ¶ 9).

Prior to Seven Trails' purchase of the Apartments in 1999, Plaintiffs provided cable service to the complex. In August 2001, Plaintiffs issued a demand letter claiming that Seven Trails owed money to Plaintiffs "due to the installation of the new cable system by Charter Communications." On August 27, 2001, Seven Trails terminated the relationship with Plaintiffs in a letter from UBS, as Seven Trails' manager. In March 2003, in State court, Plaintiffs sued Seven Trails and UBS, for, among other things, breach of the cable agreement (the underlying State cause of action).

In March 2006, Seven Trails completed a sales transaction whereupon it transferred title and possession of the Apartments, its sole asset, to BPG Properties, Ltd. Plaintiff John Guidry testified that he heard about the sale of the Apartments on the news. The amount for which the Apartments were sold is disputed, with Defendants asserting they were sold for $37,500,000 and Plaintiffs asserting they were sold for $36,750,000. (DSUF ¶ 1; Plaintiffs' Response to DSUF (PRDSUF) ¶ 1). The proceeds from the sale were wired directly to a bank account held by AMTLP. The account was one of AMTLP's consolidated accounts, and, at the time of the wire transfer, the account had a multi-million dollar balance from the proceeds of other real estate investments made by AMTLP. AMTLP did not maintain separate bank accounts for its numerous real estate investments; rather, all proceeds from these investments were combined into consolidated bank accounts located in Hartford, Connecticut. After the sale of the

Apartments, Seven Trails had approximately $120,000 in its operating account and some accounts receivable.

The trial in Plaintiffs' underlying State cause of action commenced on May 15, 2006. On May 18, 2006, approximately two months subsequent to Seven Trails' sale of the Apartments, judgment was entered against Seven Trails in the amount of $706,000.00, in favor of Plaintiffs. On June 21, 2006, Seven Trails appealed the judgment in Plaintiffs' underlying State cause of action. It did not post a bond.

The date Plaintiffs learned that the Apartments were sold, the date Plaintiffs learned that Seven Trails did not have any assets, and the date that Plaintiffs learned that the proceeds from the sale of the Apartments were transferred to AMTLP are disputed. In this regard, Defendants allege that Plaintiffs learned during testimony at the State court trial, on May 17, 2006, that the Apartments were sold. Defendants also contend that Plaintiffs' representative was informed, in January 2007, that the Apartments had been sold (DSUF ¶ 35), and Plaintiffs contend that, in June 2007, counsel communicated to Plaintiff's that the Apartments had been sold prior to trial. (Doc. 90 (Plaintiff's Statement of Undisputed Facts) (PSUF) ¶ 75). On January 5 and 12, 2007, Plaintiffs served deposition notices in aid of execution. It is undisputed that "[t]hose depositions were marked off and Plaintiffs never again sought to take depositions in aid of execution." (DSUF ¶ 36; PRDSUF ¶ 36). Plaintiffs stated in a discovery response that, on April 19, 2012, they first learned that proceeds from the sale of the Apartments were instructed to be wired to a bank held by AMTLP; they asserted they learned this "from the Purchase and Sale Agreement of the Apartments, which was provided by counsel for Seven Trails West." (DSUF ¶ 50; PRDSUF ¶ 50; Doc. 90, Ex. WW). In its December 6, 2013 Objections and Responses to Defendants' First Set of Interrogatories, Plaintiffs stated that, on January 17, 2012, Seven Trails

communicated to counsel for Plaintiffs that "Seven Trails states that it has not owned any assets from September 8, 2009 (two years before entry of the jury verdict on September 8, 2011) to the present." (Doc. 90, Ex. WW). Robert Wilkens, Director Asset Management for UBS, testified that he did not know if anyone "told Mr. Guidry that the net proceeds from the sale of Seven Trails West apartment complex were wired to Allegis Mutifamily Trust Limited Partnership." (Doc. 90-4 at 25).

On May 14, 2007, approximately one year after the notice of appeal in Plaintiffs' underlying lawsuit was filed, Seven Trails filed a third party irrevocable stand-by letter of credit, in the amount of $749,100.00, to secure the State court's judgment pending appeal. AMTLP provided these funds to Seven Trails to secure the letter of credit. In response to AMTLP's contending it expected the funds to be returned, with interest, (DSUF ¶ 37), Plaintiffs contend that there was no written agreement between Seven Trails and AMTLP regarding the transfer of the funds (PRDSUF ¶ 37).

In 2008, the Missouri appellate court found that the damages verdict was excessive and speculative, reversed the judgment on damages, and remanded the matter for a new trial on damages only. Seven Trails was released from the appeal bond and repaid AMTLP the full amount of $749,100, plus interest, for a total payment of $794,572.

On remand, the trial court entered summary judgment, awarding Plaintiffs $24,363.56. Plaintiffs appealed this damage award, and, in 2010, the Missouri appellate court reversed the second judgment and remanded the matter to the trial court, with instructions to conduct a new trial on the issue of damages. In September 2011, a new trial on damages was held, and a jury found Seven Trails liable for $1,675,000 in damages and that it should pay Plaintiffs that amount. Seven Trails appealed but did not post an appeal bond or offer security against the

8

September 2011 judgment. On September 4, 2012, the Missouri appellate court affirmed the $1,675,000 judgment.

Plaintiffs brought the instant cause of action, on August 3, 2012, in State court, and Defendants removed it to federal court. (Docs. 1, 2). Also, on August 27, 2013, this court denied Plaintiffs' request to file a Third Amended Complaint naming AMTLLC as a defendant. Upon doing so, the court found that the factual allegations and alter ego/pierce the corporate veil claim which Plaintiffs sought to file against AMTLLC were identical to those raised in the Second Amended Complaint against AMTLP, upon which the court had already determined that it lacked personal jurisdiction. (Doc. 61).

In the pending Motion for Summary Judgment, Defendants argue that summary judgment should be granted as to Count 1 (against Seven Trails for fraudulent transfer) because: (1) AMTLP, which is not a party, must be a party in order for Plaintiffs to sustain their fraudulent transfer claim, and (2) Plaintiffs claim is time barred under Mo. Rev. Stat. § 428.049(1). Defendants also argue that summary judgment should be granted as to Count 4 (against UBS through piercing the corporate veil) because there is no basis upon which the corporate veil can be pierced. (Docs. 81, 95).

## LEGAL FRAMEWORK and DISCUSSION

**A.    Count 1 - AMTLP as a Necessary Party:**

Defendants contend that AMTLP is a necessary party to this action, and, because AMTLP has been dismissed as a Defendant and is no longer a party, summary judgment should be granted in Defendant's favor.

Rule 19 of the Federal Rules of Civil Procedure addresses whether joinder of a particular party is required. Fed. R. Civ. P. 19; Gwartz v. Jefferson Mem'l Hosp. Ass'n, 23 F.3d 1426, 1428 (8th Cir. 1994). Rule 19 states, in relevant part:

> (a) Persons Required to Be Joined if Feasible.
>
> (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
>
> . . .
>
> (b) ***When Joinder Is Not Feasible. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.*** The factors for the court to consider include:
>
> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>   (A) protective provisions in the judgment; shaping the relief; or other measures;
>   (B) shaping the relief;
>   (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19.1 (emphasis added).

As a preliminary matter, the court notes that, in 2007, the Rules Committee replaced the word "necessary" with the word "required," restyled some of the longer clauses, and deleted the word "indispensable." Republic of the Philippines v. Pimentel, 128 S.Ct. 2180, 2184 (2008). These changes were stylistic only. Id. Further, if a party is not "required" under Rule 19(a), the case must go forward, and there is no need for the court to engage in a Rule 19(b) inquiry. Temple v, Synthes Corp. Ltd., 498 U.S. 5, 8 (1990) (per curiam).

In any case, Rule 19 provides that "an unjoined party is 'required' if that party's absence would prevent the court from providing complete relief to the existing parties." Sheevam v. Patel, 2009 WL 4430738, at *3 (Mo. E.D. Nov. 25, 2009) (unpublished) (citation omitted). There is authority that an entity with joint-and-several liability with a named defendant is not always a required party, although the entity may be a permissive party. Cf., Temple, 498 U.S. at 7-8 ("In his petition for certiorari to this Court, Temple contends that it was error to label joint tortfeasors as indispensable parties under Rule 19(b) and to dismiss the lawsuit with prejudice for failure to join those parties. We agree."). Defendants, however, cite several cases from jurisdictions, other than the Eighth Circuit, which they assert support an argument that the recipient of a fraudulent transfer is a required party. (Doc. 81 at 3). The Eighth Circuit case Defendants cite, Allan v. Moline Plow Co., does not support their position and is non-dispositive. 14 F.2d 912, 915 (8th Cir. 1926) ("In a suit to set aside a fraudulent conveyance, the grantor is not an indispensable party defendant where he has retained no interest, either legal or equitable, in the property conveyed.").

Plaintiffs argue that AMTLP is not a required party because they will be able to obtain relief from UBS because "UBS is a subsequent transferee and also has exclusive control of the bank accounts of AMTLP." (Doc. 88 at 4). As discussed above, however, the extent of UBS's

control over Seven Trails' finances and funds is disputed and the undisputed facts do not establish this exclusive control. Moreover, Plaintiffs have not alleged that UBS was a subsequent transferee. In any case, the court will assume, ***for purposes of this Motion only***, that AMTLP is a required party given that Seven Trails has no assets and that Plaintiffs, arguably, will be unable to obtain relief absent its presence in this lawsuit.[4] As such, the court will conduct a Rule 19(b) analysis.

As stated in Fetzer v. Cities Service Oil Co., 572 F.2d 1250, 1253 (8th Cir. 1978):

> In Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968), the Supreme Court rejected an inflexible and formulistic approach to joinder problems. The Court made it clear that Rule 19(b) requires a district court to undertake a "practical examination of the circumstances," 390 U.S. at 119-20, n.16, 88 S.Ct. 733, in order to determine whether it must dismiss the action or may "in equity and good conscience" proceed without an absent party. The Court stated that the four factors listed in the text of Rule 19(b) suggest four interests to be considered in deciding whether to dismiss the action or proceed. These four interests are: (1) the interest of the outsider whom it would have been desirable to join; (2) the defendant's wish to avoid multiple litigation or inconsistent relief; (3) the interest of the court and the public in complete, consistent, and efficient settlement of controversies; and (4) the plaintiff's interests in a forum and, on appeal, in preservation of his judgment. 390 U.S. at 109-11.

As in Fetzer, 572 F.2d at 1254, "[t]here is no doubt as to the theoretical possibility of prejudice to [AMTLP]" (even though it chose not to participate in this lawsuit) and that AMTLP may not "technically [be] bound by a decision made in its absence." Upon finding the non-present party, a railroad, not indispensable, the Eighth Circuit held, in Fetzer, that, "it is significant that the Railroad does not protest its dismissal from the proceeding; it has not appealed. One explanation for the Railroad's failure to appeal may be that, as the district court found, the Railroad's and Fetzer's interests are so closely aligned that Fetzer adequately represented the Railroad's interests." 572 F.2d at 1254. The court concluded in Fetzer that:

---

[4] The court is not finding for purposes of trial that AMTLP is a required party.

A more significant interest to consider under Rule 19(b) is the public's interest in complete and efficient settlement of controversies. As strong as this interest may be, *we cannot ignore the fact that the present proceedings have been in progress for over four years; under the circumstances, we conclude that the interests of justice and sound judicial administration are best served by proceeding without the Railroad.*

572 F.2d at 1254.

Likewise, in the matter under consider, given that Plaintiffs have been attempting to collect the judgment against Seven Trails for so many years, the court finds that the interests of justice and sound judicial administration require this lawsuit to proceed without AMTLP.

**B.  Count 1 - Statute of Limitations:**

In Count 1 of the Second Amended Complaint, Plaintiffs alleged fraudulent transfer in violation of Mo. Rev. Stat. § 428.024(1) (debtor made transfer "with actual intent to hinder, delay, or defraud") and (2) (debtor made transfer "without receiving a reasonably equivalent value in exchange for the transfer or obligation").

Defendants argue that Count 1 is time-barred based on Mo. Rev. Stat. § 428.049 which provides:

> A claim for relief or cause of action with respect to a fraudulent transfer or obligation under sections 428.005 to 428.059 is extinguished unless action is brought:
>
> (1) Under subdivision (1) of subsection 1 of section 428.024, *within four years after the transfer was made* or the obligation was incurred or, if later, *within one year after the transfer or obligation was or could reasonably have been discovered* by the claimant;
>
> (2) Under subdivision (2) of subsection 1 of section 428.024 or subsection 1 of section 428.029, *within four years after the transfer was made* or the obligation was incurred;

(emphasis added).

It is undisputed that the alleged wrongful conduct in this matter occurred in March 2006 and that this lawsuit was filed in August 2012, approximately six years after the wrongful conduct. Nonetheless, as stated above, Mo. Rev. Stat. § 428.049 provides that "the running of the statute of limitations depends upon when the plaintiff discovered or by reasonable diligence could have discovered the fraud." Bueneman v. Zykan, 181 S.W.3d 105, 112 (Mo. Ct. App. 2005). The court finds that there is a genuine issue of material fact as to when Plaintiffs, in the matter under consideration, discovered or by reasonable diligence could have discovered the alleged fraudulent transfer of funds from the sale of Seven Trails to AMTLP. Id. (denying summary judgment where genuine issue of material fact existed as to when plaintiffs should have known of alleged fraudulent transfer). As such, the court will deny the pending motion for summary judgment as to Count 1.

**C. Count 4 – Liability of UBS for Seven Trails' Actions through Piercing the Corporate Veil:**

In Count 4 of the Second Amended Complaint, Plaintiffs allege that UBS has been the sole manager of Seven Trails since 2001; UBS has had complete control and dominion over Seven Trails' finances, business affairs, and policies; UBS has been the alter ego of Seven Trails; and UBS used this complete control to give rise to Seven Trails' inability to pay the judgment which it owes to Plaintiffs. Defendants contend Count 4 fails because there is no basis to pierce the corporate veil and hold UBS liable for the judgment against Seven Trails. Specifically, Defendants argue UBS is not Seven Trails' owner or parent, a prerequisite under Delaware law for piercing the corporate veil. Defendants alternatively argue that the court should grant summary judgment in their favor as to Count 4 because Plaintiffs cannot meet Delaware's two-pronged test for piercing the corporate veil.

The court will address several preliminary matters. As explained in Pearson v. Component Tech. Corp., 247 F.3d 471, 485 n.2 (3d Cir. 2001), "[a]lthough the tests employed to determine when circumstances justifying 'veil-piercing' exist are variously referred to as the 'alter ego,' 'instrumentality,' or 'identity' doctrines, the formulations are generally similar, and courts rarely distinguish them." See e.g., United States v. Golden Acres, Inc., 702 F. Supp. 1097, 1112, n.7 (D. Del. 1988) (applying the alter ego doctrine when considering whether to pierce the corporate veil); In re Opus East, LLC, 480 B.R. 561, 570 (Bankr. D. Del. Oct. 12, 2012) ("Delaware law permits a court to pierce the corporate veil of a company 'where there is fraud or where [it] is in fact a mere instrumentality or alter ego of its owner.'") (internal citations omitted). The court, therefore, will not needlessly become entangled in jargon relevant to whether cases addressing alter ego or piercing the corporate veil apply to Count 4 of Plaintiffs' Second Amended Complaint. Defendants suggest, and Plaintiffs do not dispute, that Delaware law is applicable to a determination of whether the corporate veil may be pierced to establish UBS's liability. Given that Seven Trails is a Delaware corporation, this court agrees that Delaware law is applicable. See Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995) ("The law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders. Because [the defendant] was a Delaware corporation, Delaware law determines whether the corporate veil can be pierced in this instance." (citation omitted)). The court will, therefore, apply Delaware law to its veil-piercing analysis.

1. UBS is not an Owner or Parent of Seven Trails:

It is undisputed that UBS is not a shareholder, parent, or owner of Seven Trails, although the degree of control UBS has over Seven Trails is disputed. As such, Defendants contend that summary judgment should be granted in their favor as to Count 4.

15

The Delaware court in In re Opus East, 480 B.R. at 570, a bankruptcy action, held an "alter ego theory [only] comes into play in piercing the corporate veil when one seeks to hold liable an individual owner who controls the [company]." (quoting Eastern Minerals & Chems. Co. v. Mahan, 225 F.3d 330, 333 n.7 (3d Cir. 2000)). Because Opus Corp. did not have any controlling interest in the Debtor, the bankruptcy court found that the Trustee had failed to state a cause of action to pierce the corporate veil between the Debtor and Opus Corp. Id. However, the United States District Court for the District of Delaware held, in Golden Acres, that one does not have to be a shareholder of a corporation to be held liable under a piercing the corporate veil theory "so long as the necessary action and total control have been established." 702 F. Supp. at 1112, n.7 ("The alter ego doctrine may be applied even where defendants personally own no stock in the corporation, so long as the necessary action and total control have been established.").

Significantly, the court, in In re Opus, recognized that "Delaware law permits a court to pierce the corporate veil of a company 'where there is fraud.'" 480 B.R. at 570 (quoting Official Unsecured Creditors' Comm. of Broadstripe, LLC v. Highland Capital Mgmt., L.P., 444 B.R. 51, 102 (Bankr. D. Del. 2010) (In re Broadstripe, LLC)). Thus, under Delaware law, ownership is not required for piercing the corporate veil when control was used to commit fraud or other wrong, which resulted in an unjust loss to a plaintiff. See e.g., Marnivi S.p.A. v. Keehan, 900 F. Supp. 2d 377, 392 (D. Del. 2012) ("[A] court may disregard the corporate form in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable considerations among members of the corporation ... are involved."). The court finds, therefore, that Defendants' argument that summary judgment should be granted in their favor

16

because UBS is not a parent or owner fails, and that Defendants' Motion will be denied in this regard.

      2.      Piercing the Corporate Veil's Two-Pronged Test:

As discussed above, Defendants argue that even if the corporate veil can be pierced where a defendant is not an alter ego of its owner, summary judgment should be granted in Defendants' favor because Plaintiffs cannot meet the two-pronged test established under Delaware law for piercing the corporate veil.

As explained in Pearson, 247 F.3d at 485 n.2, "the most important differences across jurisdictions" regarding whether the corporate veil can be pierced resets on two considerations: (1) "whether an element of 'fraudulent intent,' inequitable conduct, or injustice is explicitly required," and (2) "a general sense that federal courts are more likely to pierce the veil in order to effectuate federal policy, lest state corporate laws be permitted to frustrate federal objectives." "Determining whether to [pierce the corporate veil] requires a fact intensive inquiry, which may consider the following factors, none of which are dominant: (1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the controlling shareholder siphoned company funds; or (5) whether, in general, the company simply functioned as a facade for the controlling shareholder. Delaware courts also must find an element of fraud to pierce the corporate veil." Winner Acceptance Corp. v. Return on Capital Corp., 2008 WL 5352063, at *5 (Del. Ch. Dec. 23, 2008) (unpublished).

Delaware courts apply the following two-prong test for piercing the corporate veil: (1) "the corporation and its shareholders operated as a single economic entity," and (2) "an overall element of injustice or unfairness is present." In re Opus, 480 B.R. at 570.

17

As to the first prong, the corporate veil may be pierced "where a subsidiary is in fact a mere instrumentality or alter ego of its parent." Mabon, Nugent & Co. v. Texas American Energy Corp., 1990 WL 44267, at *5 (Del. Ch. Apr. 12, 1990) (unpublished). As further explained in In re BH S & B Holdings, LLC, 420 B.R. 112, 134 (S.D.N.Y. Nov. 24, 2009), when applying Delaware law:

> With respect to the first factor, determining whether the parent and subsidiary acted as a single economic entity, courts look to numerous factors, identified by the Third Circuit in United States v. Pisani, 646 F.2d 83, 88 (3d Cir. 1981): (1) undercapitalization, (2) failure to observe corporate formalities, (3) nonpayment of dividends, (4) insolvency of the debtor corporation at the time, (5) siphoning off of the corporation's funds by the dominant parent, (6) absence of corporate records, and (7) the fact that the corporation is merely a façade for the operations of the dominant parent. Trevino, 583 F. Supp. 2d at 528-29 (citing Pisani, 646 F.2d at 88). Examples of "corporate formalities" include "whether dividends were paid, corporate records kept, [and] officers and directors functioned properly." United States v. Golden Acres, Inc., 702 F. Supp. 1097, 1104 (D. Del. 1988) (citing DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co., 540 F.2d 681, 686-87 (4th Cir. 1976)). "While no single factor justifies a decision to disregard the corporate entity, some combination of the above is required, and an overall element of injustice or unfairness must always be present, as well." Trevino, 583 F. Supp. 2d at 529 (citing Golden Acres, Inc., 702 F. Supp. at 1104).

When describing the degree of control requisite for piercing the corporate veil, the court in In re BH S & B Holdings, 420 B.H. at 134, held that "the extent of the domination and control must preclude the controlled entity from having legal or independent significance of its own. There must be an abuse of the corporate form to effect a fraud or an injustice - some sort of elaborate shell game." (internal quotations and citations omitted).

As to the second prong, the "[c]orporate form will be disregarded and individuals will be held personally liable 'in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable consideration among members of the corporation require it, are involved.'" Mason v. Network of Wilmington, Inc., 2005 WL 1653954, at *2 (Del. Ch. July 1, 2005) (unpublished) (quoting Pauley Petroleum Inc. v. Continental Oil Co., 239

A.2d 629, 633 (Del. 1968)). As stated by the court in Mason, 2005 WL 1653954, at *3, "[i]n this analysis, no single factor is dominant. Delaware Courts have built on this analysis and require an element of fraud to pierce the corporate veil. . . . 'Piercing the corporate veil under the alter ego theory requires that the corporate structure cause fraud or similar injustice. Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud.'" (quoting David v. Mast, 1999 WL 135244, at *2 (Del. Ch. Mar. 2, 1999) (unpublished) and Pauley Petroleum Inc. v. Cont'l Oil Co., 239 A.2d 629, 633 (Del. 1968)). As further explained in In re BH S & B Holdings, 420 B.R. at 134:

> With respect to the second factor required to pierce the corporate veil—a showing of unfairness or injustice - *while a showing of fraud is not necessary*, "the requisite injustice or unfairness ... is also not simple in nature but rather something that is *similar in nature to fraud or a sham*." Foxmeyer, 290 B.R. at 236 (citing Mobil Oil Corp. v. Linear Films, Inc., 718 F. Supp. 260, 268 (D. Del. 1989)). The "fraud or similar injustice ... must, in particular, 'be found in the defendants' use of the corporate form.'" Id. (quoting Mobil Oil Corp., 718 F. Supp. at 269). In other words, "the underlying cause of action, at least by itself, does not supply the necessary fraud or injustice. To hold otherwise would render the fraud or injustice element meaningless, and would sanction bootstrapping." Id. (internal quotation marks omitted). "A court shall only pierce the corporate veil in order to prevent fraud, illegality, or injustice, or the adverse effects thereof." Id.

Significantly, the court in Harco National Insurance Co. v. Green Farms, Inc., 1989 WL 110537, at *6 (Del. Ch. Sept. 19, 1989) (unpublished), noted that the issue of whether the corporate entity should be disregarded based on "constructive fraud and injustice" is an "onerous" task for summary judgment. The court finds that, in the instant matter, there are genuine issues of material fact as to whether UBS controlled and influenced AMTLP and/or Seven Trails or vice versa, and whether the corporate cloak was used to perpetrate fraud and injustice involving the transfer of funds from Seven Trails to AMTLP. As such, the court further

finds, to the extent Defendants seek summary judgment in their favor as to Count 4 of Plaintiffs' Second Amended Complaint, that Defendants' Motion should be denied.

## CONCLUSION

For the reasons discussed above, the court finds that Defendants' Motion for Summary Judgment will be denied in its entirety. The parties are instructed that the jury instructions which they submit to the court pursuant to the court's Amended Case Management Order (Doc. 76) should properly reflect the law upon which the court has relied in reaching this conclusion. Further, for the reasons set forth above, the court finds that Plaintiffs' Motion to Strike Affidavit of Michael A. Clithero (Doc. 106) will be denied, and Defendants' Motion Nunc Pro Tunc for Leave to File Sur-Reply (Doc. 111) will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Strike Affidavit of Michael A. Clithero (Doc. 106) is **DENIED**;

**IT IS FURTHER ORDERED** Defendants' Motion Nunc Pro Tunc for Leave to File Sur-Reply (Doc. 111) is **GRANTED**; and

**IT IS FINALLY ORDERED** that Defendants' Motion for Summary Judgment (Doc. 80) is **DENIED**, in its entirety, and that Defendants' request for oral argument in this matter is **DENIED**.

Dated this 5th day of September 2014.

    /s/Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE